Marshall, Chief Justice.
This is an appeal from an order of the Juvenile Court of Chat- *465 ham County transferring the prosecution of a 15-year-old girl for the offense of murder to the Superior Court. OCGA § 15-11-39. We affirm.
Stated as briefly as possible, the evidence shows that the victim was the appellant’s sister. Her corpse was found near their home in Savannah, Georgia, on March 3, 1986. Occupants, of the home consisted of the appellant and her now deceased sister, as well as the appellant’s sister-in-law, the appellant’s brother, and the appellant’s mother. The sister’s body had been severely beaten, as well as stabbed. The family members were questioned, but at least initially none were suspects.
However, a taxicab driver came forward and informed the police that, on the evening prior to the day the body was discovered, he was summoned to the deceased’s home; he picked up a female passenger, whom he later identified as the appellant, and he took her to dispose of a plastic bag, the contents of which he never saw. At the transfer hearing in this case, after identifying the appellant as his passenger on the night in question, the cabdriver testified that on that night she appeared to be nervous.
The appellant was first questioned by the police on March 5, and at that time she told the police that on March 3, the deceased had come from school, and that she had told the appellant and their sister-in-law that she was going to the mall.
However, it was subsequent to this interview on the morning of March 6 that the taxicab driver came forward, and the appellant was again questioned on the afternoon of March 6. The first questioning began at approximately 4:45 p.m., and concluded approximately 45 minutes later. The appellant and her mother were both present at the questioning, and her mother testified that she was not under the impression that the appellant was a suspect. However, the appellant was given Miranda warnings, and she and her mother were required to, and did, sign a waiver-of-Miranda-rights form. The appellant’s mother was asked, “Why, at that time, didn’t you insist on your daughter, Janet, having an attorney, Mrs. Weaver?” She responded, “All I wanted at that time was to find the murderer who killed my daughter and I was not thinking about anything else.” At this first interrogation, the appellant initially denied taking a taxicab for the purpose of disposing of a plastic bag. However, she subsequently hit the table with her fist and said, “ ‘ . . . I’m tired of lying. I want a glass of water.’ ” She then admitted that she had taken the cab in order to dispose of the plastic bag; however, she said that her sister-in-law had called the cab and that she, the appellant, did not know what was in the bag.
The police, accompanied by the appellant’s mother, then returned to the house. The mother consented to a search thereof. In the *466 attic and other areas of the house were found what appeared to be blood stains and traces of human hair.
A second interrogation of the appellant occurred at approximately 7:30 p.m. that evening, and it lasted approximately three hours. During this second interrogation, she was again advised of her Miranda warnings, and she was informed that she might be charged with murder. She proceeded to tell various different stories to the police as to what took place on the evening of her sister’s disappearance. The thrust of what she said was that a fight occurred between her sister and her sister-in-law. When the appellant entered the room in which this was taking place, the deceased was slouched over a clothes hamper with blood coming from her throat. She finally admitted to some involvement in beating the deceased, putting the deceased’s body in the attic, later dragging the body out of the house and putting it in a nearby lane, placing the deceased’s clothes in the plastic bag, and then cleaning up the house.
Based on the alleged commission of the offense of murder, a petition alleging the appellant to be a delinquent/unruly child was filed in the Chatham County Juvenile Court. Under the provisions of OCGA § 15-11-39, the state requested a transfer of the prosecution of this offense to superior court. A hearing was held in accordance with the foregoing statute. OCGA § 15-11-39 (a) (1). Following the hearing, the juvenile court entered an order granting the state’s motion to transfer. As required by the statute, the juvenile court in ordering the transfer determined that there are reasonable grounds to believe that the appellant committed the act alleged, that the appellant is not commitable to an institution for the mentally retarded or mentally ill, and that the interests of the appellant and the community require that the appellant be placed under legal restraint and the transfer be made. OCGA § 15-11-39 (a) (3) (A) — (a) (3) (C). In fact, as to § 15-11-39 (a) (3) (B), the appellant has even stipulated that she is not commitable to an institution for the mentally retarded or mentally ill.
The gravamen of the appellant’s appeal is that the evidence supporting the murder charge consists of the appellant’s statements to the police; under the appellant’s theory, these statements are not admissible as evidence, because: (1) as a result of the appellant’s young age and lack of intellectual ability, her waiver of her right to counsel was not knowing and voluntary; and (2) in that the appellant’s mother was not unbiased and free from conflicting interest in this case, she lacked the capacity to effect a waiver of the appellant’s right to counsel. The appellant also puts forth what appears to us to be the rather curious argument that the evidence in this case is insufficient to show that the deceased was even murdered.
1. It is true that as a general matter “a party is entitled to representation by legal counsel at all stages of any proceedings alleging de *467 linquency, unruliness, or deprivation . . .” OCGA § 15-11-30 (b). A. C. G. v. State, 131 Ga. App. 156 (1) (205 SE2d 435) (1974) and cits. “Counsel must be provided for a child not represented by his parent, guardian, or custodian. If the interests of two or more parties conflict, separate counsel shall be provided for each of them.” OCGA § 15-11-30 (b), supra; K. E. S. v. State, 134 Ga. App. 843 (1) (216 SE2d 670) (1975). Consequently, in K. E. S., where there was a juvenile probation-revocation proceeding instigated by a complaint filed by the mother, the Court of Appeals held that “[u]nder the facts of the instant case . . . the waiver of counsel by the mother does not satisfy statutory standards.” 134 Ga. App. at p. 847. There, the Court of Appeals held that “the mother who waives the child’s rights must be an unbiased mother, free of interests conflicting with the needs of her daughter whom she undertakes to represent — an ally, not an adversary.” Id. at p. 848.
2. However, this does not mean that a juvenile being interrogated by the police must be provided counsel, if the juvenile’s parents are, for some reason, unable to waive the juvenile’s right to counsel.
“In Riley v. State, 237 Ga. 124, 128 (226 SE2d 922) (1976), we rejected a per se exclusionary rule to confessions and incriminating statements given outside the presence of the juvenile’s parents, as had been applied in Freeman v. Wilcox, 119 Ga. App. 325 (167 SE2d 163) (1969). We there held that ‘the question of a voluntary and knowing waiver depends on the totality of the circumstances,’ to be analyzed by a consideration of nine factors promulgated by West v. United States, 399 F2d 467, 469 (1968), cert. den. 393 U. S. 1102.” Marshall v. State, 248 Ga. 227, 228-229 (3) (282 SE2d 301) (1981). See C. R. T. v. State, 148 Ga. App. 628 (252 SE2d 58) (1979). See also Houser v. State, 173 Ga. App. 378 (326 SE2d 513) (1985) and cits. The nine-factor test promulgated in West is “ ‘(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge . . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extrajudicial statement at a later date.’ ” Crawford v. State, 240 Ga. 321, 324 (240 SE2d 824) (1977).
“ ‘The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous.’ Miller v. State, 240 Ga. 110, [112 (239 SE2d 524) (1977)] and cit.” Marshall v. State, supra, 248 *468 Ga. at p. 231.
Decided November 12, 1986
Reconsideration denied November 25, 1986.
Adam P. Cerbone, for appellant.
Spencer Lawton, Jr., District Attorney, Debra Engel Lipsitz, Gregory R. Jacobs, Assistant District Attorneys, Michael J. Bowers, Attorney General, for appellee.
3. At the evidentiary, transfer hearing in this case, the juvenile court judge was required to determine, in his discretion, whether there are “reasonable grounds” to believe that the appellant committed the act alleged. R. S. v. State, 156 Ga. App. 460 (1) (274 SE2d 810) (1980). We cannot say that he erred in determining that such “reasonable grounds” do exist.
4. Nor can we say that the trial judge’s determination that the appellant knowingly and voluntarily waived her right to counsel is clearly erroneous.
Here, the appellant was 15 and one-half years old at the time of the police interrogation. She was in the seventh grade. It is true that there was testimony that she suffers from some sort of learning disability. However, as argued by the state, there was no evidence as to the nature of this disability, and there are certain learning disabilities, such as dyslexia, which have no correlation to comprehension or intelligence. The evidence here shows that the appellant fully understood and comprehended that which was said to her in daily conversations with others. The appellant was interrogated here before formal charges were filed. She was not held incommunicado. There is no evidence that coercive or deceptive interrogation techniques were employed. The appellant never refused to speak with the police, and she has not repudiated her extrajudicial statements at any later date. While she was at police headquarters prior to the second interrogation, she engaged in casual conversation with a police department employee. During both interrogations, she never showed any emotion other than anger. At the end of the second interrogation she hit her hand on the table and demanded a glass of water.
The trial judge’s finding of knowing and voluntary waiver is certainly not clearly erroneous.

Judgment affirmed.

All the Justices concur.