A97A0403. IN THE INTEREST OF D. T. C., a child.
(487 SE2d 21)

BIRDSONG, Presiding Judge.

The Gwinnett County Juvenile Court adjudicated 16-year-old D. T. C. delinquent after determining he committed acts which, were he an adult, would constitute the crimes of aggravated assault, possession of a firearm during the commission of a felony, and felony theft by taking.

Police called to a Gwinnett apartment complex found the victim and D. T. C. wrestling on the hood of a car. The 15-year-old victim tes-

tified that over the course of the preceding several days, he and D. T. C. had argued over a girl. Early on the morning of this incident, D. T. C. approached the victim at the bus stop wearing a black sweatshirt with the hood pulled over his face. He asked the victim to accompany him to a friend's house. As they rounded the corner of a building, D. T. C. pulled a pistol and said, "You thought I was going to let this ride. I told you I was going to retaliate. . . . You are going to die, partner." D. T. C. fired at the victim but missed. The victim ran, and D. T. C. chased him through the complex, firing the pistol several more times. When the pistol apparently jammed, the victim began wrestling with D. T. C., took the gun from him, and hit him in the head with it several times. A bystander picked up the gun and called police. The pistol was identified as the property of D. T. C.'s aunt, who testified D. T. C. had no permission to have it. After his arrest, D. T. C. gave an incriminating statement to police.

The court committed D. T. C. to detention for 60 months pursuant to OCGA § 15-11-37 (e). *Held*:

1. D. T. C. claims error in the admission of his videotaped custodial statement. See *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922); see also *In the Interest of R. J. C.*, 210 Ga. App. 286, 287 (435 SE2d 759).

Evidence showed D. T. C. was 16 years old and taking tenth grade special education classes at the time of this incident. He had an I.Q. of 64 and was intellectually deficient. When an officer attempted to question D. T. C. at the hospital, D. T. C. said: "You know what happened." The officer replied that he knew only one side of the story, and D. T. C. responded only: "well, you know the whole story." According to his own testimony, the officer then informed D. T. C.'s mother that D. T. C. "didn't want to talk about it. He didn't want to say anything about what happened." The officer then told D. T. C.'s mother that the boy would be taken to a police precinct to be interviewed, but appellant contends and there is supporting evidence that his mother was directed to the wrong jail. Appellant also contends his mother was never informed that she had a right to be present at any interrogation.

An investigator at police headquarters interviewed D. T. C. after contacting a juvenile intake officer. See OCGA § 15-11-19 (a) (3). Prior to the interview, the investigator explained to D. T. C. that juvenile charges would be brought against him. He then explained he wanted to make sure D. T. C. understood each of his rights. The investigator read to D. T. C. each right from a form, beginning with, "I have the right to remain silent." However, the officer read these rights in first person so that it was *voiced* as if *the officer* had the right to remain silent. He asked D. T. C. if he understood each right, and D. T. C. responded affirmatively. At the *Jackson-Denno* hearing,

however, D. T. C. testified that during the interview he knew what he said could be used in court and knew he could have his mother or an attorney there, but he was nervous and confused and did not understand he did not have to talk to the police. The investigator then asked "what happened," and D. T. C. recounted the incident and answered questions.

The facts that D. T. C. has an I.Q. of 64, has an intellectual deficiency, and may be mentally retarded do not automatically invalidate his waiver of *Miranda* rights. *J. E. W. v. State*, 256 Ga. 464, 468 (4) (349 SE2d 713); *Marlowe v. State*, 187 Ga. App. 255, 256-257 (3) (370 SE2d 20). Weighing the credibility of the witnesses and the conflicting evidence presented, the juvenile court generally has discretion to admit a statement as knowingly, freely and voluntarily given, and we will not reverse such finding unless that discretion is manifestly abused. See *J. E. W.*, supra.

Assuming for the sake of argument, however, that the court erred in admitting this statement, we shall not reverse the adjudication of D. T. C. as having committed the delinquent act charged. An appellant must show not merely error but also *harm;* unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, we will not reverse. *Stewart v. State*, 180 Ga. App. 266, 267 (349 SE2d 18). We are troubled by the officer's giving of the *Miranda* warning to this juvenile in the first person "I," referring plainly to the officer and thus plainly indicating that *the officer* had the rights to remain silent and to have counsel present. We think this might naturally indicate to a person of low I.Q., or even an unsophisticated person of moderate I.Q., that *the officer* has the right to remain silent, and we expressly disapprove of that practice as potentially harmful error. Moreover, the psychologist's testimony that he thought D. T. C. had an "adequate level of understanding" of his rights "as they're read" by the officer in the videotape is fairly vague. However, it happens in this case that the other evidence against D. T. C. is so overwhelming that the admission of his statement probably did not affect the court's adjudication; and moreover, evidence outside D. T. C.'s statement is so overwhelming as to his shooting at the victim and the circumstances of the shooting that any error, even constitutional error, in admitting D. T. C.'s statement probably did not affect the verdict. *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869); *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

2. D. T. C.'s claim that the trial court erred in admitting booking photographs allegedly taken in violation of OCGA § 15-11-60 (e) is waived by his failure to object to this evidence before it was admitted. See *Brewer v. State*, 219 Ga. App. 16, 18 (3) (463 SE2d 906). Because D. T. C. was charged with a designated felony, admission of booking

photographs was authorized by OCGA § 15-11-60 (a), and this objection would have been meritless even if an objection was properly raised.

3. We shall not consider D. T. C.'s claim that he had a right to demand that his case be transferred to adult court, because he made no motion for transfer and did not raise this issue with the juvenile court until his motion for new trial. This enumeration presents nothing for review. See *Brewer*, supra. Compare *Thompson v. State*, 258 Ga. 816, 817 (1) (375 SE2d 219).

4. The juvenile court found D. T. C. committed an offense which, had D. T. C. been an adult, would constitute the crime of "possession of a firearm during the commission of a felony" described in OCGA § 16-11-106 (b) (1). That statute states, in relevant part: "Any person who shall have on or within arm's reach of his person a firearm . . . during the commission of . . . [a]ny *crime* against or involving the person of another . . . and which *crime* is a felony, commits a felony." (Emphasis supplied.)

D. T. C. argues, and the State acknowledges, that "[a] juvenile under the jurisdiction of the juvenile court is not charged with the commission of a crime, but rather with the commission of a *delinquent act*, which is not a crime but instead '[a]n act designated a crime by the laws of this state.' OCGA § 15-11-2 (6) (A)." (Emphasis supplied.) *In the Interest of M. B.*, 217 Ga. App. 660, 661 (458 SE2d 864).

OCGA § 15-11-2 (6) (A) clearly provides that a juvenile may be charged with commission of *"[a]n act designated a crime* by the laws of this state." (Emphasis supplied.) However, appellant infers from *In the Interest of M. B.* and from *In the Interest of J. B.*, 222 Ga. App. 252, 253 (1) (474 SE2d 111) that because juveniles do not commit "crimes" but rather "acts" *which would be crimes if committed by an adult*, a juvenile cannot be adjudicated for a delinquent act if the definition of the *crime* (as it would be if committed by an adult) requires a finding of another included or coincident "crime" or "felony." This argument is erroneous. *In the Interest of M. B.*, supra at 662, merely held that the failure of a juvenile to appear as ordered does not amount to "felony-bail jumping" under a strict construction of OCGA § 16-10-51 (a), for that statute "does not embrace the failure of a juvenile to appear as ordered." *In the Interest of J. B.* merely held that the juvenile could not be convicted of misdemeanor "escape" because he had not "been charged with a felony, misdemeanor, or violation of a municipal ordinance," id. at 253 (1), and a close review of these facts shows that when J. B. removed himself from police custody he had not been *charged* with *any* act. The analysis of that case may have been different if the juvenile had been charged with an act "designated a crime" (OCGA § 15-11-2 (6) (A)) or with having committed a

"designated felony act." OCGA § 15-11-37 (a) (2) (B). In *In the Interest of J. B.* at 253, we stated that in *In the Interest of M. B.* "we held that the State could not show the juvenile had been 'charged with . . . a felony,' as provided by the statute, even though the delinquency petition alleged facts which would constitute a felony had M. B. been an adult." The reason J. B. could not be charged with a felony act in that case was that the crime of felony-bail jumping "does not embrace the failure of a juvenile to appear." *In the Interest of M. B.*, supra at 662.

The law balks at concluding that a juvenile has committed a "crime," but it does not balk at calling his act a "designated felony act" (OCGA § 15-11-37 (a) (2) (B); see *In the Interest of M. B.*, supra at 661), or an act which would be "designated a crime" if it were committed by an adult. OCGA § 15-11-2 (6) (A). We have never held that a juvenile cannot commit a "delinquent act" when the definition of the act as a crime (if committed by adults) includes a requirement of the commission of a "felony," "designated felony," or "crime." See *In the Interest of K. A. B.*, 188 Ga. App. 515 (373 SE2d 395). The "delinquent act" is an act which would be a "crime" if committed by an adult, and if this "crime" requires the finding of another or coincident "crime," this likewise may be committed by a juvenile, although it is called a "delinquent act." The use of these hard terms in the legislative definitions of crimes can cause no confusion in juvenile cases if they are understood always as allegations of a "delinquent act" when committed by a juvenile. *In the Interest of M. B.*, supra.

Since appellant agrees he could be adjudicated of a "delinquent act" by committing an act which would be a crime if committed by an adult, his contention that he could not be adjudicated of a delinquent act if the "crime" contains within its definition another "crime" (which would also be a crime if committed by an adult) is inconsistent. The entire legislative scheme of adjudicating juveniles for committing "delinquent acts" is based on the fact that *those acts would be crimes "if"* committed by an adult (OCGA § 15-11-2 (6) (A); *In the Interest of M. B.*, supra at 661), and this necessarily includes "crimes" which contain within their definition other acts designated as "crimes" or "felonies" if committed by an adult. It is *necessary* to an adjudication of a "delinquent act" that the act be one which is defined as, and would be, a "crime" if it were committed by an adult, and this includes "delinquent acts" which would include another or coincident "crime" if committed by an adult.

5. The trial court erred in its written finding that D. T. C. committed certain *"offenses."* The judgment below is affirmed on condition that the juvenile court's finding that the child committed the *offenses* of aggravated assault, possession of a firearm during the commission of a felony, and theft by taking (felony) be amended to state that child committed "delinquent acts which would be crimes if

committed by an adult, to wit, aggravated assault, possession of a firearm during the commission of a felony and theft by taking (felony)."

*Judgment affirmed on condition. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 6, 1997 — ■ Before Judge Rodatus.

*Rich & Smith, Randolph G. Rich,* for appellant.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney,* for appellee.