540 S.E.2d 682 (2000)
246 Ga. App. 500
In the Interest of K.D.J., a child.
No. A00A1533.
Court of Appeals of Georgia.
October 24, 2000.
*684 Ann N. Garner, for appellant.
Paul L. Howard, Jr., District Attorney, Lynn K. Armstrong, David E. Langford, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, for appellee.
PHIPPS, Judge.
The State filed a delinquency petition alleging that K.D.J., age fourteen, had engaged in eight delinquent acts. After an adjudicatory hearing, the juvenile court found K.D.J. delinquent for carrying a concealed weapon, carrying a pistol without a license, possessing a firearm, aggravated assault, and burglary.[1] The court entered detailed findings, noting a multitude of other delinquent acts that K.D.J. had committed previously, including: drug violations, fleeing or attempting to elude police, criminal damage to property in the second degree, driving without a license, reckless driving, and carrying a concealed weapon. K.D.J. contests the admission of certain evidence and challenges the sufficiency of the evidence relating only to the aggravated assault and the burglary.[2] After review of these issues, we affirm.
On appeal, we view all the evidence in the light most favorable to support the findings and judgment of the juvenile court.[3] When so viewed, the evidence established that while ten-year-old T.C. was riding his bicycle on New Year's Day 1999, he encountered K.D.J. sitting on a car. When T.C. stopped, K.D.J. revealed a gun and threatened to shoot T.C. unless T.C. took him home and showed him the location of his mother's "stuff." Later, K.D.J. threatened to shoot T.C. and his whole family. When threatened yet another time, T.C. let K.D.J. into his house. T.C. testified that once inside, K.D.J. warned him that he would "shoot me in my kneecap if I didn't show him where my mama's stuff [was]." T.C.'s mother testified that on January 1, after discovering that two pellet guns, one .32 caliber derringer, and certain coins were missing from her home, she contacted police. She voiced her certainty that the guns had been taken on that day.
In response to her 911 call, Officer Scott Priestly began an investigation. The following day, January 2, T.C.'s mother again contacted police after her son told her that K.D.J. had again threatened to shoot him, this time for calling the police the previous day. Priestly searched the general area for K.D.J., without success. But after T.C.'s mother called again on January 2 to report that K.D.J. was firing a pistol in the vicinity of her apartment, Priestly returned with another police officer. As K.D.J. attempted to flee down a back stairwell, the other officer intercepted him. Priestly confiscated a .38 caliber revolver concealed inside K.D.J.'s coat pocket.
1. K.D.J. contends that the trial court erred in relying upon the testimony of T.C., an incompetent minor, whose testimony he claims was rife with inconsistencies, incoherent, and lacked any independent corroborating evidence.
*685 Objections to evidence must be made at the time the evidence is offered; otherwise, any issue as to admissibility is waived.[4] At the hearing, K.D.J. posed no objection to T.C.'s testifying. "Objections not raised at trial cannot be raised for the first time on appeal."[5] Therefore, any issue as to T.C.'s competency is not properly before this court.[6]
2. K.D.J. asserts that the trial court improperly allowed T.C.'s mother to express conclusions about facts for which she lacked an independent basis. He argues that since she had no personal knowledge as to who may have entered her home during her absence, her testimony had no probative value.
While on direct examination, T.C.'s mother was asked, "[h]ow do you know that [K.D.J. came to your home]?" As she began responding, "[b]ecause he came and told us that K.D.J. had just showed him a gun in his coat pocket and told him to" defense counsel interposed a hearsay objection. No ruling was elicited from the court, and the prosecutor immediately pursued a different line of questioning. Later, however, on cross-examination, this exchange transpired:
DEFENSE COUNSEL: You're saying no one was in your home except for [K.D.J.]?
MOTHER: Yes.
DEFENSE COUNSEL: How did [K.D.J.] get in the house?
MOTHER: Because he showed up with the gun.
DEFENSE COUNSEL: How do you know that?
MOTHER: That's when he came and told me.
DEFENSE COUNSEL: So your son told you. So you weren't home, is that what you're saying?
MOTHER: No. I was down the street.
Regardless of whether the mother's response on direct was inadmissible hearsay, the comments now challenged were remarks elicited by questions propounded during cross-examination. A defendant cannot induce a purported error by his own conduct, "`sit silently hoping for a favorable verdict and obtain a new trial when that tactic fails.'"[7] Induced error does not furnish a basis for reversal.[8]
3. K.D.J. asserts that the trial court erred in allowing the testimony of Officer Priestly which he claims was inadmissible hearsay. We disagree. The testimony of an arresting officer about the legal investigation and the circumstances surrounding an arrest is authorized as original evidence under OCGA § 24-3-2.[9] When an investigating officer's statement explains the events leading up to and surrounding an arrest, such evidence is being offered for a permissible purpose and is admissible.[10]
While testifying, Priestly chronicled the specific events immediately preceding the apprehension and arrest of K.D.J. including the fact he had confiscated a .38 revolver from K.D.J. after the youth had attempted to elude capture. Priestly described his own investigation and unsuccessful search for K.D.J. No error occurred in the admission of this testimony.
4. K.D.J. contends that the evidence was insufficient to support an adjudication of delinquency as to the aggravated assault. He claims that the State failed to prove the commission of an act of aggravated assault and that, at most, T.C. was merely shown an unloaded gun.
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence *686 in favor of the juvenile court's adjudication.[11] Here, the delinquency petition alleged that on or about January 2, 1999, K.D.J. made "an assault upon the person of [T.C.] with [a] .38 caliber pistol, a deadly weapon, by threatening to shoot the said victim."[12]
The victim, T.C., identified K.D.J. as his assailant. T.C. testified that K.D.J. had repeatedly threatened to shoot him, on New Year's Day and again on January 2. T.C. testified that he saw the gun in K.D.J.'s coat pocket and heard the click of its trigger. T.C. described the gun brandished by K.D.J. as being "all black and had a brown handle." On January 2, the day K.D.J. had threatened to kill T.C. because of police involvement, K.D.J. was apprehended outside of T.C.'s apartment. When arrested, K.D.J. was armed with a .38 pistol, a deadly weapon. Priestly described the gun that he removed from K.D.J.'s coat pocket as "a black .38 caliber 2 inch revolver with a brown wooden handle," a description corresponding to the victim's. This evidence was sufficient to support an adjudication of delinquency for aggravated assault.[13]
K.D.J. also claims that no evidence proved that T.C. was ever in reasonable apprehension of immediately receiving a violent injury. The state of mind of the victim of an assault is a question of fact, which may be established by indirect or circumstantial evidence.[14] Whether this element of the crime of aggravated assault has been properly proven is a matter for determination by the factfinder, here, the juvenile court.[15] Although T.C. never explicitly recited the phrase that he was "in reasonable fear of receiving an immediate bodily injury," the juvenile court could have so found based upon T.C.'s testimony that K.D.J. had threatened to kill or maim him, the repeated 911 calls from T.C.'s worried mother, T.C.'s demeanor while testifying about the threats, and the other evidence adduced at the hearing, including the fact that officers apprehended K.D.J. armed with a .38 caliber handgun shortly after shots had been fired outside T.C.'s home.
5. K.D.J. also claims that the evidence was insufficient to support an adjudication of delinquency as to the burglary charge. We disagree.
T.C.'s mother denied giving permission for K.D.J. to enter her apartment or to take her property. She testified that the missing items had disappeared on January 1, the same day that she learned that K.D.J. had forced his way inside. T.C. testified that K.D.J. had threatened to shoot him unless he let him inside the apartment and showed him the whereabouts of his mother's "stuff." This evidence was sufficient, within the meaning of Jackson v. Virginia,[16] to show that K.D.J. entered the dwelling house of another with the intent to commit a theft therein.[17]
Judgment affirmed.
JOHNSON, C.J., and SMITH, P.J., concur.
NOTES
[1] The juvenile court dismissed the counts of terroristic threats, obstruction, and possession of a firearm during the commission of a crime. The court later conducted the required hearing for a disposition under the designated felony act, formerly OCGA § 15-11-37(a)(2)(B)(ii).
[2] In the Interest of D.T.C., 226 Ga.App. 364, 368(4), 487 S.E.2d 21 (1997) (statutory definitions differentiate between "crimes" and "delinquent acts").
[3] In the Interest of C.T., 197 Ga.App. 300, 301(2), 398 S.E.2d 286 (1990).
[4] Anthony v. State, 236 Ga.App. 257, 259(2), 511 S.E.2d 612 (1999); Brewer v. State, 219 Ga.App. 16, 18(3), 463 S.E.2d 906 (1995).
[5] (Punctuation omitted.) Jacobson v. State, 201 Ga.App. 749, 751(2)(b), 412 S.E.2d 859 (1991); Fields v. State, 194 Ga.App. 149, 150(2), 390 S.E.2d 71 (1990).
[6] Keasler v. State, 165 Ga.App. 561(1), 301 S.E.2d 915 (1983).
[7] Price v. State, 222 Ga.App. 655, 656(1), 475 S.E.2d 692 (1996); see Sams v. State, 239 Ga. App. 715, 717(3), 521 S.E.2d 848 (1999).
[8] See White v. State, 180 Ga.App. 185, 186(3), 348 S.E.2d 728 (1986).
[9] Aaron v. State, 203 Ga.App. 658, 659(1), 418 S.E.2d 66 (1992).
[10] Ward v. State, 193 Ga.App. 137, 138-139(2), 387 S.E.2d 150 (1989).
[11] In the Interest of R.L.W., 225 Ga.App. 253, 254(2), 483 S.E.2d 361 (1997).
[12] The applicable essential elements of aggravated assault are: (1) the commission of an assault as defined in OCGA § 16-5-20 and (2) that it was aggravated by use of a deadly weapon.
[13] See King v. State, 213 Ga.App. 268, 270, 444 S.E.2d 381 (1994); see also In the Interest of J.K.D., 211 Ga.App. 776, 778(2), 440 S.E.2d 524 (1994).
[14] Williams v. State, 208 Ga.App. 12, 13, 430 S.E.2d 157 (1993); McGee v. State, 165 Ga.App. 423, 425(3), 299 S.E.2d 573 (1983).
[15] See McKinney v. State, 218 Ga.App. 633, 635(2), 463 S.E.2d 136 (1995).
[16] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[17] Igle v. State, 223 Ga.App. 498, 500(3), 478 S.E.2d 622 (1996); see OCGA § 16-7-1(a).