**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 2, 2022**

# In the Court of Appeals of Georgia

A22A0459. IN THE INTEREST OF A. G., a child.

DILLARD, Presiding Judge.

Following an incident in which then 16-year-old A. G. shot his mother's boyfriend, the State filed a delinquency petition in the Juvenile Court of Chatham County, alleging that he committed acts that—if committed by an adult—would constitute attempted murder, aggravated assault, aggravated battery, cruelty to children, and criminal trespass. Thereafter, the State filed a motion to transfer A. G.'s case to the superior court for prosecution; but after a hearing, the juvenile court denied the motion. On appeal, the State contends the juvenile court erred in excluding evidence of A. G.'s prior bad acts, admitting evidence of the victim's prior bad acts, and improperly weighing the factors it was required to consider in determining

whether to transfer the case under OCGA § 15-11-562. For the reasons set forth *infra*, we affirm.

The record shows that Elijah Winn began dating A. G.'s mother in 2014, and, not long thereafter, moved in with her and her five children (including A. G.). At the time Winn moved in with the family, A. G. was 16 years old, had dropped out of school, and did not get along with Winn. Eventually, A. G.'s home life deteriorated to the point that, on October 26, 2020 (after a dispute with his mother about his curfew), he ran away from home—allegedly staying with either his grandmother or friends. Then, late in the evening on November 1, 2020, A. G. called his mother and asked if he could come by the house to pick up a package containing some clothes that he ordered online. His mother told him it was too late in the evening but that he could stop by the house the next day.

Around 11:00 a.m. the next morning, A. G. showed up at the family house to retrieve his package (Winn was not there at that time). After doing so, A. G. asked his mother if he could come inside to take a shower; but still angry about his behavior, she refused his request, telling him that he should shower at his grandmother's house instead. A. G. became upset, and after a brief argument, his mother shut the door. Now further enraged, A. G. began kicking the door, significantly damaging it in the

2

process. At this point, his mother—who was scared because of A. G.'s actions—called Winn and loudly demanded that he immediately return home to help.

Over the next fifteen minutes, a surveillance camera system on the front door of a neighbor's home across the street showed A. G. pacing back and forth on the front porch before sitting down in a chair. Then, nearly 20 minutes after A. G's mother's call for help, Winn arrived and parked his vehicle in the driveway. As he exited the vehicle and walked toward the porch, A. G. drew a handgun and fired seven shots at Winn, all of which struck him. And while Winn lay on the ground, A. G. reloaded the handgun, walked closer, and ultimately fired three more shots at him. Severely wounded, Winn said to A. G., "I probably about to die," to which A. G. responded, while smirking, "No, you're not." A. G. then walked back to the porch, picked up his package, and started walking down the street toward a friend's house before eventually running in that direction.

When the shooting started, A. G.'s mother took his younger siblings upstairs and barricaded them in a bedroom while calling 911. Shortly thereafter, police and emergency medical technicians arrived on the scene, and Winn was transported to the hospital, where doctors were successful in stabilizing him. Nevertheless, Winn sustained serious injuries, remained hospitalized for over a month, and underwent

numerous surgeries to treat the results of his gunshot wounds. Meanwhile, although he left the scene before police arrived, a detective was able to contact A. G. that afternoon and convince him to surrender to authorities. Two months later, the police recovered the handgun from A. G.'s friend down the street, who admitted he had recently purchased the weapon from a private seller but did not know how A. G. acquired it.

Subsequently, the State filed a petition of delinquency in the juvenile court, charging A. G. with acts that—if committed by an adult—would constitute attempted murder, aggravated assault, aggravated battery, cruelty to children, and criminal trespass. Several months later, the State filed a motion to transfer the case to the superior court, arguing that the seriousness of the crimes, *inter alia*, warranted trying A. G. as an adult. Thereafter, A. G. filed a notice of intent to introduce evidence of Winn's prior act of violence—specifically, a domestic abuse incident involving A. G.'s mother. In addition, A. G. filed a motion to preclude the State from introducing a prior bad act he allegedly committed, arguing, *inter alia*, that the State failed to provide proper notice of its intent to introduce such evidence.

On April 19, 2021, the juvenile court began a hearing on the State's motion to transfer. At the start of the hearing, the court heard argument on A. G.'s request to

admit evidence of Winn's prior act of domestic violence against his mother and his motion to exclude evidence of his own prior bad act, which consisted of an Instagram video of him allegedly brandishing a handgun at a charity event one week before. Following those arguments, the juvenile court ultimately ruled to admit evidence of Winn's prior bad act but exclude the evidence pertaining to A. G.

The hearing then proceeded, during which the juvenile court heard testimony from Winn; A. G.'s mother; one of his younger brothers (who witnessed his mother's argument with A. G.); and the investigating detective, who recounted the aforementioned evidence. In addition, a forensic psychologist submitted a behavioral health evaluation of A. G., in which he opined that—although A. G. exhibited difficulty managing his anger—he might be amenable to treatment and should therefore receive it (including counseling and occupational training). And at the conclusion of the hearing, the juvenile court denied the State's motion to transfer, affirming that ruling in an order a few days later. This appeal follows.[1]

---

[1] With regard to the State's right to a direct appeal, OCGA § 15-11-564 (a) provides: "The decision of the court regarding transfer of the case shall only be an interlocutory judgment which either a child or the prosecuting attorney, or both, have the right to have reviewed by the Court of Appeals." But the Supreme Court of Georgia has clarified that, under this statute, "decisions regarding the transfer of juveniles to superior court, though interlocutory in nature, are directly appealable to the Court of Appeals." *In the Interest of K. S.*, 303 Ga. 542, 546 (814 SE2d 324)

1. We first address the State's contention that the juvenile court erred in denying its transfer motion. Specifically, the State argues the court improperly weighed the factors it was required to consider in determining whether to transfer the case under OCGA § 15-11-562. We disagree.

OCGA §§ 15-11-561 and 15-11-562 address the transfer of a juvenile's case to superior court for criminal prosecution. OCGA § 15-11-561 (a) provides, in relevant part, that before transferring jurisdiction from juvenile court to superior court, the juvenile court must determine that

> (1) There is probable cause to believe that a child committed the alleged offense; (2) Such child is not committable to an institution for the developmentally disabled or mentally ill; and (3) The petition alleges that such child (A) Was at least 15 years of age at the time of the commission of the offense and committed an act which would be a felony if committed by an adult . . . .

Upon making those determinations, and "[a]fter consideration of a probation report, risk assessment, and any other evidence the court deems relevant, including any evidence offered by a child," the juvenile court "may determine that because of the

(2018); *accord In the Interest of C. M.*, 356 Ga. App. 368, 370 (847 SE2d 374) (2020).

6

seriousness of the offense or such child's prior record, the welfare of the community requires that criminal proceedings against such child be instituted" and transfer the case to superior court.[2] And in determining whether such a transfer is appropriate, the juvenile court must also consider "the non-exhaustive list of eleven criteria set forth in OCGA § 15-11-562 (a),"[3] which includes:

> (1) The age of such child; (2) The seriousness of the alleged offense, especially if personal injury resulted; (3) Whether the protection of the community requires transfer of jurisdiction; (4) Whether the alleged offense involved violence or was committed in an aggressive or premeditated manner; (5) The impact of the alleged offense on the alleged victim, including the permanence of any physical or emotional injury sustained, health care expenses incurred, and lost earnings suffered; (6) The culpability of such child including such child's level of planning and participation in the alleged offense; (7) Whether the alleged offense is a part of a repetitive pattern of offenses which indicates that such child may be beyond rehabilitation in the juvenile justice system; (8) The record and history of such child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions, and other placements; (9) The sophistication and maturity of such child as determined by consideration

---

[2] OCGA § 15-11-561 (c).

[3] *In the Interest of K. S.*, 348 Ga. App. 440, 441 (823 SE2d 536) (2019); *see* OCGA § 15-11-561 (c) ("The court shall also consider the criteria listed in subsection (a) of Code Section 15-11-562.").

7

of his or her home and environmental situation, emotional condition, and pattern of living; (10) The program and facilities available to the juvenile court in considering disposition; and (11) Whether or not a child can benefit from the treatment or rehabilitative programs available to the juvenile court.[4]

Importantly, in reviewing a juvenile court's ruling on the State's motion to transfer, this Court is "*limited* to ascertaining whether there was *some evidence* to support the juvenile court's determination, and *absent an abuse of discretion*, we will affirm [its ruling]."[5]

In this matter, the juvenile court noted in its order that it considered the criteria outlined in OCGA § 15-11-562, and immediately thereafter recounted its findings—discussing all 11 of the foregoing factors. The court specifically focused on the eleventh factor, finding that based on the psychologist's report, A. G. could benefit from the services it could provide. In further explaining its decision, the court

---

[4] OCGA § 15-11-562 (a).

[5] *In the Interest of C. M.*, 356 Ga. App. at 369 (punctuation omitted) (emphasis supplied); *see In the Interest of T. S.*, 336 Ga. App. 352, 352-53 (785 SE2d 32) (2016) ("On appeal from an order transferring a case from juvenile court to superior court, the function of this Court is limited to ascertaining whether there was some evidence to support the juvenile court's determination that the requirements of . . . OCGA § [15-11-561] have been met, and absent an abuse of discretion, we will affirm the order transferring jurisdiction.").

again emphasized that it considered "all the above factors," and that while it did not discount the severity of the incident and its impact on Winn, it found A. G. was capable of being rehabilitated—particularly noting that he was only 16 years old at the time of the incident, had no prior history with the juvenile court system or prior charges, and had never previously been provided rehabilitative services. As a result, the court concluded that the community's interests would be better served by treating A. G. as a juvenile.

Nevertheless, the State maintains the juvenile court erred in denying its motion to transfer, noting that Georgia caselaw has held that a balancing test of the juvenile's amenability to treatment against the interests of the community is required "when the State seeks a transfer to superior court under a theory that, even though the juvenile might be amenable to treatment within the juvenile court system, the seriousness of the crime warrants it."[6] But the State does not assert the juvenile court failed to conduct such a balancing test,[7] and indeed, such an assertion would be belied by the

---

[6] *In the Interest of C. M.*, 356 Ga. App. at 372 (3) (c).

[7] *Cf. In the Interest of B. J. W.*, 247 Ga. App. 437, 440 (2) (543 SE2d 811) (2000) (holding that failure of juvenile court's order to set forth required balancing interests of juvenile and community, necessitated remand of case to juvenile court to make such necessary findings).

9

record. To the contrary, the court explicitly acknowledged the severity of A. G.'s actions and the interests of the community in prosecuting him as an adult but, nonetheless, placed greater weight on the evidence indicating the juvenile's amenability to treatment. Essentially, the State's position amounts to reiterating the same evidence the juvenile court considered in its order and arguing that it reached the wrong conclusion. But this position conflates disagreement with abuse of discretion, and this Court is limited to "ascertaining whether some evidence exists to support the juvenile court's determination."[8] Importantly, determinations of a juvenile court "made on an exercise of discretion, if based upon evidence, will not be controlled by this Court."[9] So, while we certainly understand and appreciate the State's position, the juvenile court did not abuse its discretion in denying the State's motion to transfer A. G.'s case to the superior court.

2. The State also contends the juvenile court erred in excluding evidence of A. G.'s prior bad acts. Again, we disagree.

OCGA § 24-4-404 (b) provides:

---

[8] *In the Interest of K. S.*, 348 Ga. App. at 450 (3) (punctuation omitted); *see supra* note 5 & accompanying text.

[9] *In the Interest of K. S.*, 348 Ga. App. at 450 (3) (punctuation omitted).

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

And the Supreme Court of Georgia has adopted a three-part test by which we evaluate the admissibility of so-called "other acts" evidence: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[10]

---

[10] *Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016) (punctuation omitted); *accord Webb v. State*, 359 Ga. App. 453, 458 (2) (858 SE2d 546) (2021).

Importantly, a trial court's evidentiary rulings "must be affirmed absent an abuse of discretion."[11]

In this matter, a few days before the evidentiary hearing on the State's motion to transfer, A. G. filed a motion to preclude the State from introducing evidence of a prior bad act by him—*i.e.*, an Instagram video, recorded nearly a week before Winn's shooting, allegedly depicting A. G. brandishing a handgun at actors working in a charity haunted house sponsored by a local Shriners chapter. But nothing in the record indicates this incident resulted in any complaint or report to authorities. Thus, in his motion, A. G. argued the source of the video—*i.e.*, the person who filmed it—was unknown and that the State failed to provide sufficient notice of its intent to introduce such evidence as required by OCGA § 24-4-404 (b). A. G. then reiterated the argument he made at the beginning of the transfer hearing. The juvenile court agreed, noting its questions about authentication but focusing on the State's failure to provide notice, and then issuing an order excluding the evidence on that latter ground.

---

[11] *Jones v. State*, 352 Ga. App. 380, 388 (2) (b) (834 SE2d 881) (2019) (punctuation omitted).

On appeal, the State maintains the notice provision does not apply to transfer hearings. But OCGA § 24-1-2 (b) provides that "[t]he rules of evidence shall apply generally to all nonjury trials and other fact-finding proceedings of any court in this state subject to the limitations set forth in subsections (c) and (d) of this Code section." Indeed, in construing that statute, our Supreme Court has held that "under our . . . Evidence Code, unless a fact-finding proceeding involves one of the twelve situations enumerated in OCGA § 24-1-2 (c) and (d), the rules of evidence fully apply[.]"[12] And it is undisputed that a transfer hearing is a fact-finding proceeding and none of the limitations outlined in OCGA § 24-1-2 (c) and (d) are applicable.[13] Given these circumstances, we cannot conclude the juvenile court abused its discretion by excluding this prior act evidence.

3. The State further contends the juvenile court erred in admitting evidence of Winn's prior act of domestic violence, but we disagree that this decision constitutes reversible error.

Prior to the transfer hearing, A. G. filed a notice of his intent to admit evidence that Winn was arrested for an act of domestic violence against A. G.'s mother

---

[12] *Parker v. State*, 296 Ga. 586, 594 (3) (a) (769 SE2d 329) (2015).

[13] *See* OCGA § 24-1-2 (c) and (d).

13

approximately three years before the shooting incident. Following argument on the issue, the juvenile court admitted the evidence, and the State now appeals that ruling. Importantly, both the State and A. G. suggest in their briefs that this evidence was admitted under OCGA § 24-4-404 (a);[14] but that is not clear from the record. Indeed, in his notice, A. G. sought to admit a *prior act* by Winn, rather than reputation or opinion evidence pertaining to his character.[15] And while the Supreme Court of Georgia has noted that, under OCGA § 24-4-405 (b),[16] it may be possible that "a victim's specific acts of violence of which the defendant had personal knowledge may be admissible to show the defendant's state of mind with respect to a claim of

---

[14] *See* OCGA § 24-4-404 (a) ("Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for [as permitted under subsections (1) - (3)]").

[15] *See* OCGA § 24-4-405 (a) ("In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion."); *Mohamud v. State*, 297 Ga. 532, 536 (3) (773 SE2d 755) (2015) (noting that "as a general rule, character evidence of a victim is limited to reputation or opinion, *not* specific bad acts").

[16] *See* OCGA § 24-4-405 (b) ("In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct.").

self-defense,"[17] A. G. has not claimed he acted in self defense in this matter. Consequently, the admission of this evidence is governed by OCGA § 24-4-404 (b), which in addition to prescribing the manner for admitting prior act evidence against a defendant,[18] similarly—for the most part—controls the admission of a victim's prior acts.[19]

Here, during the transfer hearing, the juvenile court agreed with A. G. that the evidence of Winn's arrest was relevant to his home life and to rebut the State's argument that he was a danger to the community—doing so via the implication that the shooting incident pertained solely to his poor relationship with Winn. But in its order admitting Winn's prior arrest for domestic violence, the juvenile court stated only that it found the evidence relevant to OCGA § 15-11-562 (a) (9), which requires the court—when determining whether to transfer the case—to consider "[t]he sophistication and maturity of such child as determined by consideration of his or her

[17] *Strong v. State*, 309 Ga. 295, 314 (3) n.22 (845 SE2d 653) (2020).

[18] *See Smart*, 299 Ga. at 417 (2) (explaining admissibility of defendant's prior acts under OCGA § 24-4-404 (b)).

[19] *See* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 173 (6th ed. 2018) (noting that as other acts evidence of alleged victims is generally controlled by Federal Rules of Evidence 404 (b), OCGA § 24-4-404 (b) is the best vehicle for introducing such evidence under Georgia law).

home and environmental situation, emotional condition, and pattern of living[.]" It is not clear, then (to say the least), that the juvenile court admitted this evidence under OCGA § 24-4-404 (b). But even if the court erred in admitting Winn's prior act of domestic violence, such an error does not warrant reversal of the court's ruling to deny the State's transfer order. Indeed, under OCGA § 24-1-103 (a), "[e]rror shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." In fact, even assuming that transferring the case implicated a "substantial right" held by the State, here, the juvenile court's order denying the motion to transfer only briefly mentions Winn's prior domestic abuse and, instead, focuses on the evidence—supported by the psychologist's report—that A. G. was capable of being rehabilitated—particularly because he was only 16 years old at the time of the incident, had no prior history with the juvenile court system or prior charges, and had never previously been provided rehabilitative services. Thus, we find it highly unlikely that the exclusion of Winn's prior act of domestic violence perpetrated against A. G.'s mother and subsequent arrest would have resulted in the juvenile court granting the State's motion to transfer the matter to the superior court.[20]

---

[20] *See In the Interest of I. C.*, 300 Ga. App. 683, 687 (2) (b) (686 SE2d 279) (2009) (holding that even if one of juvenile court's factual findings was not supported by evidence, court's restrictive custody order was not required to be vacated given

Accordingly, the juvenile court did not commit reversible error in this regard, and we therefore affirm its denial of the State's motion.

For all these reasons, the juvenile court's judgment is affirmed.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

that court's other findings of fact were supported by evidence and showed circumstances that authorized the order); *In the Interest of D. T. C.*, 226 Ga. App. 364, 366 (1) (487 SE2d 21) (1997) (declining to reverse juvenile court's adjudication of delinquency despite arguable error in admitting juvenile's custodial statement given evidence in support of court's determination).